UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAUREEN HEIKKINEN,

    Plaintiff,

v.

BANK OF AMERICA, N.A. AND CHASE
HOME FINANCE LLC,,

    Defendants.

                                           /

Case No. 11-12532

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [9] AND CANCELLING MOTION HEARING SCHEDULED FOR MARCH 7, 2012**

    Plaintiff's suit arises out of the foreclosure and July 14, 2010 sheriff's sale of residential property located at 5568 Mason Road, Fowlerville, Michigan (the "Fowlerville property"). It is undisputed that, on May 10, 2011 when Plaintiff filed suit, Michigan's six-month statutory period of redemption had expired. Plaintiff's complaint alleges the following state-law claims against Defendants Bank of America, N.A. and Chase Home Finance LLC: (1) quiet title due to unlawful foreclosure; (2) conversion of $14,511.63 – the difference between the $169,740.88 amount published in the May 7, 2009 Detroit Legal News' Notice of Foreclosure Sale and the sum of $184,252.41 that Bank of America paid for the property at the July 14, 2010 sheriff's sale; and (3) misrepresentation and breach of contract because Plaintiff entered into a "Home Affordable Modification Trial Period Plan," but Defendants refused to modify Plaintiff's mortgage loan despite express promises to the contrary.

The Court finds that the facts and legal arguments are adequately presented in the parties' pleadings and that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), it is hereby ORDERED that Defendants' motion for summary judgment [9] be resolved as submitted, and the hearing previously scheduled for Defendants' motion on March 7, 2012 is hereby CANCELLED.

For the reasons stated below, this Court GRANTS Defendants' motion for summary judgment.

## I. Facts

On February 18, 2003, Plaintiff and her husband, Scott Cross, executed a 30-year mortgage on the Fowlerville property as security for a $180,000 promissory note also executed that same day. (Pl.'s Compl. ¶ 7; Defs.' Mot., Ex. A, Mtge.)

On February 24, 2003, the mortgage was assigned to Bank of Ann Arbor, and then subsequently assigned to Washington Mutual Bank on February 26, 2003. (Defs.' Mot., Exs. B & C, Assignments.)

On February 20, 2007, a quit claim deed was recorded in the Livingston County Records showing that Scott Cross had quit claimed his interest in the property to Plaintiff. (Pl.'s Compl. ¶ 8.)

In September 2008, JP Morgan Chase Bank acquired its interest in the Fowlerville property from the FDIC, acting as receiver for Washington Mutual Bank. (*Id.* at ¶ 11.)

At the end of 2008, Plaintiff fell behind on her mortgage payments. (Defs.' Mot., Ex. E, Pl.'s Dep. at 17.)

On February 24, 2009, Washington Mutual Home Loans notified Plaintiff in writing that she had failed to make timely payments on her mortgage since December 1, 2008 and had thus breached that contract; owed $4,099.45 in delinquent payments thus far; to cure the breach, must pay that amount and any other monthly payments and late charges due and owing by March 26, 2009; and failure to cure by that date "could and probably would" result in foreclosure proceedings and sale of Plaintiff's property. (*Id.*, Ex. F, 2/24/09 notice of default letter.)

Plaintiff made no attempt to cure her default before March 26, 2009. (Pl.'s Dep. at 22-23.)

On April 5, 2009, JP Morgan Chase Bank assigned the mortgage to Defendant Bank of America. (Pl.'s Compl. ¶ 11; Defs.' Mot., Ex. D.)

On April 16, 2009, attorneys for the mortgage loan servicer of Plaintiff's mortgage published a Notice of Foreclosure in the Detroit Legal News advising that the amount owed on the mortgage was $169,740.88 at 6% interest per annum and that a sheriff's sale would be held on May 20, 2009. (Pl.'s Compl., Ex. B.)

There was no foreclosure sale on May 20, 2009. (Pl.'s Compl. at ¶ 13.)

On November 11, 2009, Plaintiff executed a document titled "Home Affordable Modification Trial Period Plan (Step One of Two-Step Documentation Process)." (Defs.' Mot., Ex. G.) (hereinafter "TPP"). It identifies the Lender or Servicer as Chase Home Finance LLC and provides a December 1, 2009 effective date for a Trial Period Plan.

Under the Trial Period Plan ("Plan"), Plaintiff was required to pay $1,023.00 on or before December 1, 2009; January 1, 2010; and February 1, 2010. The Trial Period was

3

to begin on December 1, 2009 and to end on the earlier of March 1, 2009 or date the Trial Period Plan is terminated (the "Modification Effective Date").  (*Id.* at 2, ¶ 2.)

The document expressly provides that Plaintiff's loan documents will <u>not</u> be modified and the Trial Period Plan will be terminated if, prior to the Modification Effective Date:

> (i) the Lender does not provide [Plaintiff] with a fully executed copy of this Plan and the Modification Agreement;
> (ii) [Plaintiff] ha[s] not made the Trial Period payments required under Section 2 of this Plan;
> (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or
> (iv) [Plaintiff] do[es] not provide all information and documentation required by Lender. . . .

(*Id.* at 2, ¶ 2.F.)  With her signature, Plaintiff acknowledged that the Lender was not agreeing to a loan modification and that certain conditions must be satisfied before her mortgage loan would be modified:

> I understand that <u>this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until</u> (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan. . . .

(*Id.* at ¶ 2.G (emphasis added).)  Plaintiff likewise acknowledged that the Plan did not promise that her mortgage and note would be modified.  Rather, the Plan merely provided an Offer to modify if certain conditions were satisfied:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. . . .

4

\* \* \*

> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income . . . to determine whether I qualify for <u>the offer described in this Plan</u> (the "Offer").  I understand that after I sign and return one copy of this Plan to the Lender, the Lender will review my modification package and send me written notice if I do not qualify for the Offer.

(*Id*. at 1 (emphasis added).)

On December 11, 2009, December 24, 2009, January 15, 2010, February 12, 2010, and March 5, 2010, Chase Home Finance LLC ("Chase") wrote to Plaintiff and informed her that it had not received all required documents necessary to complete her request for modification of her mortgage loan and identified the documents not yet received.  (Defs.' Mot., Ex. H, letters.)  Plaintiff testified that she does not recall sending the requested documents to Chase, but believes she called Chase.  (Pl.'s Dep. at 41.)

On February 5, 2010, Chase also wrote to Plaintiff informing her that as of February 2, 2010 it had not received the trial payment due the first of February.  (*Id*., Ex. I.)

On May 3, 2010, Chase Home Finance LLC ("Chase") wrote to Plaintiff notifying her that the Trial Plan Period Offer through the Making Home Affordable ("HMA") modification program had expired because Plaintiff failed to prove Chase with the documents they had requested.  Chase's letter also notified Plaintiff that "if your Loan was in foreclosure at the time of the Trial Period Plan Offer, the foreclosure process may resume without further notice."  (Defs.' Mot., Ex. J, 5/3/10 ltr.)

On May 13, 2010, Chase sent Plaintiff a similar letter notifying her that the Trial Plan Period Offer had expired because she failed to make all the required payments by the end of the trial period.  (*Id*., Ex. K, 5/13/10 ltr.)

Bank of America then resumed foreclosure proceedings.

On July 14, 2010, the Fowlerville property was sold at a sheriff's sale for $184,253.41. (*Id.*, Ex. L, Sheriff's Deed on Mtge. Foreclosure.) The Sheriff's Deed on Mortgage Foreclosure, along with the published and posted notices of foreclosure and various affidavits concerning redemption, were recorded on July 21, 2010 with the Livingston County Register of Deeds. (*Id.*) The recorded Affidavit Declaring Redemption Designee expressly provides that Bank of American, N.A. currently holds the mortgage, that redemption must include $184,252.41, and that a "written, official computation of the redemption amount" will be prepared for all who request. (*Id.* at 7, ¶¶ 7, 9.)

On January 14, 2010, Michigan's statutory redemption period expired without Plaintiff exercising her right to redemption or requesting a written, official computation of the redemption amount.

On May 6, 2011, Bank of America sent Plaintiff a notice to vacate the Property. (Pl.'s Compl., Ex. E.)

On May 11, 2011, Plaintiff filed this lawsuit in state court, and Defendants subsequently removed it to this Court on grounds of diversity jurisdiction.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III. Analysis

This matter is before the Court on Defendants' motion to summary judgment arguing that (1) Plaintiff has no standing to challenge the foreclosure and thus no claim to quiet title to the Fowlerville property because she failed to exercise her right to redemption within the statutory six month period after the July 14, 2010 sheriff's sale; (2) Plaintiff cannot establish that Defendants made oral or express promises to modify her mortgage loan and thus cannot establish a breach of contract or misrepresentation claim; and (3) Plaintiff cannot establish her claim of conversion by ignoring her failure to make monthly payments on her mortgage for 15 months, late fees, and other payments due and owing on her mortgage and note at the time of the July 14, 2010 sheriff's sale. Plaintiff's response does not address her quiet title claim. Rather, she argues that (1) the Trial Period Plan was an enforceable contract requiring Defendants to modify her mortgage loan when she complied with its terms; (2) alternatively, if the TPP is not an enforceable contract, Plaintiff is entitled to restitution of the three payments of $1,023.00 she made under that TPP because (a) the payments were made in reliance on Defendants' illusory promise that her mortgage loan would be modified if she made the payments and provided the required documents, and (b) the three payments totaling $3,069.00 were not applied to her outstanding mortgage debt; and (3) she is entitled to $14,511.53 -- the difference between the amount owing under the mortgage loan as stated in the April 16, 2009 published foreclosure notice and the amount paid at the July 14, 2010 sheriff's sale. Plaintiff's arguments are rejected. This Court agrees with Defendants, grants its motion, and dismisses the claims in Plaintiff's complaint.

**A. Claim to Quiet Title Due to Wrongful Foreclosure is Rejected**

As stated above, Plaintiff's response fails to address her quiet title claim alleging wrongful foreclosure. Even if Plaintiff had addressed her quiet title claim, it lacks merit and is thus dismissed with prejudice.

It is undisputed that the statutory redemption period expired without Plaintiff exercising any right of redemption. Accordingly, under well-established Michigan law, Plaintiff's rights in and title to the Fowlerville property were extinguished when she failed to exercise her right of redemption before the six-month statutory redemption period expired. *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942) (observing that "Plaintiffs . . . lost all their right, title, and interest in and to the property at the expiration of their right of redemption . . . ."). *See also Spartan Distrib., Inc. v. Golf Coast Int'l, LLC*, No. 295408, 2011 WL 1879722, at *4 (Mich. Ct. App. May 17, 2011) (observing that although "plaintiff could have tendered a payment and preserved its right to redemption," it failed to do so and further observing that "[e]quitable relief if not an appropriate remedy where a party's failure to preserve its statutory right of redemption is wholly attributable to its own lack reasonable diligence."). Because Plaintiff failed to timely exercise her redemption rights, she cannot now collaterally attack any aspect of the foreclosure or sheriff's sale of the Fowlerville property. *See Overton v. Mortg. Elec. Registration Sys., Inc.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) (rejecting the plaintiff's post-foreclosure and redemption claims as an impermissible "collateral attack on the foreclosure of the property" despite the fact that the plaintiff had filed suit challenging the foreclosure before the redemption period expired). Because the redemption period has expired, "Plaintiff c[an]

9

no longer seek a judgment setting aside the foreclosure sale." *Benford v. CitiMortgage, Inc.*, No. 11-12200, 2011 WL 5525942, at *4 (E.D. Mich. Nov. 14, 2011) (Duggan, J.).

### B. Plaintiff's Breach of Contract and Misrepresentation Claims Are Rejected

### 1. There is No Contract Signed By Defendant Financial Institutions

Plaintiff argues that the "Home Affordable Modification Trial Period Plan" that she executed on November 11, 2009 was an enforceable contract requiring Defendants to modify her mortgage loan once she complied with its terms, that she did comply with all its terms, and Defendants breached that contract when it failed to modify her mortgage loan. Defendants argue the opposite. This Court agrees with Defendants. The Michigan Court of Appeals recently rejected a breach of contract argument similar to Plaintiff's under substantially similar circumstances.

In *Voydanoff v. Select Portfolio Serv., Inc.*, No. 298098, 2011 WL 6757841 (Mich. Ct. App. Dec. 22, 2011), the plaintiff filed suit against his mortgage loan servicer and others after he defaulted on his mortgage loan and his residential property was subsequently subjected to foreclosure proceedings and sold at a sheriff's sale. Among other claims, the plaintiff alleged that the mortgage loan servicer breached an agreement to modify his mortgage loan. The "Trial/Permanent Modification Agreement" that the plaintiff relied upon for this claim was described by the court as a "proposal." *Id.* at 6. The court observed that the plaintiff had signed the document but the mortgage loan servicer had not. *Id.* The Michigan Court of Appeals rejected the plaintiff's breach of loan modification agreement claim and concluded that the "loan modification proposal" from plaintiff's mortgage loan servicer "did not ripen into a binding agreement, primarily because [it] bears only [the

10

plaintiff]'s signature, and therefore, does not objectively reflect a meeting of the minds regarding the essential modification terms." *Id.* at *7. The same rationale and result apply here.

Plaintiff claims that Defendants breached a contract to modify her mortgage loan. The document she claims was breached is titled "Home Affordable Modification Trial Period Plan (Step One of Two-Step Documentation Process)." (Defs.' Mot., Ex. G.) That document expressly provides that the Trial Period Plan is not a loan modification and Plaintiff's loan documents would not be modified "unless and until" Plaintiff met all the conditions for modification, including providing Chase Home Finance LLC with all requested documentation, and she had received of a fully executed copy of a Modification Agreement. (*Id.* at 2, ¶¶ 2.F, 2.G.) When Plaintiff signed this document, she acknowledged that it did not promise that her mortgage and note would be modified. Rather, it was merely an offer to do so if certain conditions were satisfied:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. . . .
>
> * * *
>
> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income . . . to determine whether I qualify for <u>the offer described in this Plan</u> (the "Offer"). I understand that after I sign and return one copy of this Plan to the Lender, the Lender will review my modification package and send me written notice if I do not qualify for the Offer.

11

(*Id.* at 1 (emphasis added).)

Thus, similar to the plaintiff in *Voydanoff*, Plaintiff here cannot establish a claim that Defendants breached an agreement to modify her mortgage loan. It is undisputed that Defendants did not sign the TPP. Thus, the loan modification proposal she signed "did not ripen into a binding agreement, primarily because [it] bears only [the plaintiff]'s signature, and therefore, does not objectively reflect a meeting of the minds regarding the essential modification terms." *Voydanoff*, 2011 WL 6757841 at *7.[1]

Moreover, even if Plaintiff could establish that the TPP was a binding agreement to modify her mortgage, she cannot establish that she satisfied all the conditions for modification set out in the TPP. Specifically, despite Chase's repeated, written notices to Plaintiff for additional documents it needed to complete her loan modification request, Plaintiff testified that she did not recall sending the requested documents to Chase. (Defs.' Mot., Ex. H, 12/11/09, 12/24/09, 1/15/10, 2/12/10, and 3/5/10 letters; Pl.'s Dep. at 40-41.)

### 2. Statute of Frauds Bars Plaintiff's Breach of Contract and Misrepresentation Claims

Plaintiff's complaint alleges that Defendants expressly promised Plaintiff that she would qualify for a modified loan if she complied with their requirements, that she submitted documents and made the required monthly payments, that she did so in reliance on Defendants' misrepresentations and false promise of a loan modification, that Defendants refused to modify her mortgage loan, and that she suffered damages as a result. (Pl.'s

---

[1]Under the facts presented in this matter, the Court finds the non-binding decisions to the contrary that Plaintiff relies on to be unpersuasive.

Compl. at ¶¶ 33-35.) Defendants argue here that Plaintiff's claims -- whether based on oral promises to modify her loan documents or promises in a document not signed by Defendants -- are barred by Michigan's statute of frauds. This Court agrees.

Under Michigan's statute of frauds, a financial institution's[2] promise regarding financial accommodation, like a loan modification, is not enforceable unless it is (1) in writing, and (2) signed by an authorized agent of the financial institution. Mich. Comp. Laws § 566.132(2)(c).[3] As observed by the Michigan Court of Appeals, this statute "plainly states that a party is precluded from bringing a claim -- no matter its label -- against a financial institution to enforce the terms of an oral promise. . . ." *Crown Tech Park v. D & N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000). *See also Manire v. Am. Equity Mortg., Inc.*, No. 04-60278, 2005 WL 2173679, at *2 (E.D. Mich. Sept. 6, 2005) (dismissing claims of intentional and negligent misrepresentation against a financial institution as barred by

---

[2]A "financial institution" is defined as "a state or national chartered bank . . . or an affiliate or subsidiary thereof." Mich. Comp. Laws § 566.132(3). Defendant Bank of America, N.A. is a national chartered bank. Moreover, at all relevant times up to May 1, 2011, Defendant Chase Home Finance, LLC, was a wholly owned subsidiary of JP Morgan Chase Bank, N.A., a national chartered bank. On May 1, 2011, Chase merged into JP Morgan Chase Bank, N.A. and no longer exists as a separate entity. (Defs.' Mot., Ex. AA.)

[3]Mich. Comp. Laws § 566.132(2)(c) provides that:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> * * *
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

13

Michigan's statute of frauds). Because Plaintiff presents no evidence of a writing signed by Defendants promising to modify her loan documents, her claims based on any such promise do not survive Defendants' motion for summary judgment and are dismissed.

### 3. Claims for Restitution or Return of Payments Made Under TPP Are Rejected

Plaintiff also claims that she is entitled to restitution of the three payments of $1,023.00 she made under that TPP because (a) the payments were made in reliance on Defendants' illusory promise that her mortgage loan would be modified if she made the payments and provided the required documents, and (b) the three payments totaling $3,069.00 were not applied to her outstanding mortgage debt. These claims lack merit.

First, as discussed above, the statute of frauds precludes any claim based on a promise from a financial institution that is not in writing and signed by the financial institution. Second, Plaintiff presents no evidence that her three payments totaling $3,069.00 were not applied to her outstanding mortgage debt. It is undisputed that Plaintiff had defaulted on her mortgage loan at the time she made the three partial monthly payments of $1,023.00 as set out in the TPP and remained in default through foreclosure and the sheriff's sale of the Fowlerville property. Because Plaintiff presents no evidence that these payments were not owed on her mortgage loan or applied to the outstanding balance of her mortgage loan, her claims seeking the return of the $3,069.00 paid under the TPP are dismissed.

### C. Plaintiff's Conversion Claim is Rejected

Plaintiff's complaint also asserts a statutory claim of conversion under Mich. Comp. Law § 600.2919a. Without any factual or legal support, Plaintiff argues that she is entitled

to $14,511.53 -- the difference between the $169,740.88 amount reported as owing under her mortgage loan in the April 16, 2009 published foreclosure notice and the $184,252.41 amount paid at the July 14, 2010 sheriff's sale. Plaintiff's argument is rejected for numerous reasons. First, it ignores the undisputed fact that, other than the three reduced payments made in December 2009, January 2010, and February 2010, Plaintiff failed to make the monthly payments due and owing on her mortgage loan. She ignores the 6% interest, the late payment fees, the escrow items, and other fees she agreed to pay in connection with her mortgage loan. Unlike Plaintiff, Defendants present evidence supporting their claim that the amount bid at the sheriff's sale reflected the full amount due and owing on Plaintiff's mortgage loan at that time. (Defs.' Mot., Ex. L, Aff. Declaring Redemption Designee at ¶ 4.) Second, Plaintiff's conversion argument ignores that Michigan's foreclosure by advertisement statute requires that the notice of foreclosure must include the "amount claimed to be due on the mortgage <u>on the date of the notice</u>," not on the date of the eventual sheriff's sale. Mich. Comp. Laws § 600.3212(c) (emphasis added). In sum, Plaintiff presents no evidence supporting her claim that there were surplus proceeds from the foreclosure sale of the Fowlerville property and thus no surplus is owed to her under Mich. Comp. Laws § 600.3252. Accordingly, Plaintiff cannot defeat Defendants' motion for summary judgment as to her conversion claim. Plaintiff's conversion claim, along with all the other claims in her complaint, are dismissed with prejudice.

**IV. Conclusion**

For the above-stated reasons, Defendants' motion for summary judgment [9] is GRANTED.

                s/Nancy G. Edmunds
                Nancy G. Edmunds
                United States District Judge

Dated: February 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 27, 2012, by electronic and/or ordinary mail.

                s/Carol A. Hemeyer
                Case Manager